Case: 3:05-cv-00748-bbc   Document #: 15   Filed: 05/02/06   Page 1 of 13

Document Number  Case Number
05-C-0748-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
05/02/2006 11:31:23 AM CDT

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN

BRENDA MOMBOURQUETTE,
By her Guardian TAMMY
MOMBOURQUETTE,
E.S. (A MINOR) and C.S. (A MINOR)

Case No: 05 C 0748 C

           Plaintiffs,

WISCONSIN DEPARTMENT OF
HEALTH AND FAMILY SERVICES,

           Involuntary Plaintiffs,

   -vs-

WISCONSIN COUNTIES MUTUAL
INSURANCE CORPORATION; CHARLES
AMUNDSON, Individually in his Supervisory
Capacity; JEANNE REINART, Individually;
CANDACE WARNER, Individually; DAVID
SHALDACH, Individually; SANDIE WEGNER,
Individually; ANNA JANUSHESKE, Individually;
MIKE WILDES, Individually; JANITA LEIS,
Individually; SUE WIEMAN, Individually;
and PATRICIA FISH, Individually

           Defendants.

## AMENDED COMPLANT

### I.    NATURE OF PROCEEDINGS

    101.   This is a civil action commenced under Title 42 of the United States Code, secs. 1983 and 1985 and other applicable provisions of the laws of the United States and the State of Wisconsin brought to redress the violation of the plaintiff's rights guaranteed by the United States Constitution, which proximately caused Brenda Mombourquette's attempted suicide and consequent permanent brain damage. The actions of the defendants displayed deliberate

indifference to Brenda Mombourquette's rights to be protected against the strong likelihood of the self-infliction of harm, guaranteed by the Eighth and/or Fourteenth Amendment of the United States Constitution.

## II.  JURISDICTION AND VENUE

201. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. 1331.

202. Venue is properly laid in the Western District of Wisconsin because the wrongful acts complained of herein took place within the County of Monroe, within the Western District of Wisconsin.

## III.  PARTIES

301. The plaintiff Brenda Mombourquette is an adult female resident of the United States and at all times relevant hereto was a resident of Monroe County, Wisconsin and is now residing in Trempealeau County, Wisconsin and is incompetent for the purposes of legal proceedings.

302. Plaintiff, Tammy Mombourquette is the sister and Legal Guardian of Brenda Mombourquette with standing to bring this action on behalf of Brenda Mombourquette pursuant to Wisconsin Statutes Sec. 880.25 and by order of Circuit Court for Monroe County signed by Judge Michael J. McAlpine and entered on September 13, 2004.

303. Plaintiff E.S. is the minor child of Brenda Mombourquette and is a resident of Monroe County Wisconsin.

304. Plaintiff C.S. is the minor child of Brenda Mombourquette and is a resident of Monroe County Wisconsin.

305. The defendant Charles Amundson is an adult male citizen of the United States, currently a resident of Monroe County and, at all times material hereto, was Sheriff of Monroe

County.

306. The defendant Jeanne Reinart is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin, and was at all times material hereto employed as a Jail Nurse at the Monroe County Jail.

307. The defendant Candace Warner is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a Jail Nurse at the Monroe County Jail.

308. The defendant David Shaldach is an adult male citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as jail lieutenant for the Monroe County Sheriff's Department.

309. The defendant Sandie Wegner is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a certified jailor for the Monroe County Sheriff's Department.

310. The defendant Anna Janusheske is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as certified Jailor for the Monroe County Sheriff's Department.

311. The defendant Michael Wildes is an adult male citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a certified Jailor for the Monroe County Sheriff's Department.

312. The defendant Janita Leis is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a certified Jailor for the Monroe County Sheriff's Department.

313. The defendant Sue Wieman is an adult female citizen of the United States,

currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a certified Jailor for the Monroe County Sheriff's Department.

314.    The defendant Patricia Fish is an adult female citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as a certified Jailor for the Monroe County Sheriff's Department.

315.    The defendant, Wisconsin County Mutual Insurance Corporation is a domestic insurance corporation, with its principal office located at 100 River Place, Suite 101, Monona, Wisconsin 53716, engaged in the business of writing liability insurance for Wisconsin counties and their employees, including Sheriffs and Jailors, and at all times material hereto insured the Monroe County, it's Sheriff and jail staff , defendants herein , for all damages and costs caused by the defendants to the plaintiff entered against Monroe County and any officer or employee for all acts committed while carrying out their duties as an officer or employee acting within the scope of their employment.

316.    The Involuntary Plaintiff, Wisconsin Department of Health and Family Services is the funding source for Wisconsin medical assistance and upon information and belief may have provided benefits to the plaintiff as a result of the subject claim and, therefore, may be entitled to reimbursement under Wis. Stats. §49.89(2).

## IV.  ALLEGATIONS OF FACT

401.    On October 18, 2002, the Defendant Charles Amundsen was advised in writing by Wisconsin Department of Justice Office of the State Jail Inspector that the Monroe County Jail was in violation of Wisconsin Statute 302.36 Segregation Of Prisoners for the seventh

consecutive year and that their failure to properly segregate prisoners was of special concern with regard to high risk inmates including those considered a suicide risk.

402. On November 10, 2002 plaintiff, Brenda Mombourquette was booked into the Monroe County Jail on a probation hold pending transfer to a substance abuse treatment program as a result of her addiction to the prescription pain medication oxycontin.

403. The Monroe County Jail screening report filed for Brenda Mombourquette on November 12, 2002 documented that she was taking the medication Zoloft for depression

404. On November 12, 2002, Monroe County Jailor Marilyn Stuart at, 14:14, entered into the jail log that at 14:41 that she had been cautioned by plaintiff's probation officer that the plaintiff was sad and had made the statement "if she can't have her kid's back what is the use of going on". Stuart noted we will keep an eye on her, but did not commence a suicide watch.

405. On November 12, 2002 at 20:18 plaintiff told Defendant Shaldach she could not make it another night without killing herself and Shaldach relayed the information to defendant Reinart and entered into the jail log that we will keep an eye on her but did not commence a suicide watch.

406. According to training and policy, Monroe County jailors are required to share information about any indicators of suicidal thinking by inmates with each other, and on November 12, 2002 defendants Wildes, Wegner, Reinnart, Shaldach, Leis and Amundson were on duty at the Monroe County Jail.

407. On November 13, 2002 at 07:30 Defendant Janusheske received and logged a call from defendant Reinart advising her to keep an eye on plaintiff, but Janusheske did not commence a suicide watch.

5

408. On November 13, 2002 at 16:47 Defendant Leis found plaintiff in a cell where she had attempted suicide by cutting her wrists.

409. Pursuant to policy and training, Monroe County Jailors were required to share information about suicide attempts with other jailors and on November 13, 2002 at 16:47 defendants Amundson, Wildes, Wegner, Warner, Fish, Wieman and Janusheske were on duty at the Monroe County Jail and were made aware of plaintiffs suicide attempt.

410. As a result of the plaintiff's suicide attempt defendants Warner and Leis filed a statement of emergency detention in Monroe County Circuit court alleging that she presented a substantial risk of harm to herself, and as a result, plaintiff was taken to Gundersen Lutheran Psychiatric unit on an emergency detention for evaluation pursuant to Wis. Stats. 51.15 where she remained until November 18, 2002.

411. On November 18, 2002, plaintiff Brenda Mombourquette was returned to the Monroe County Jail where she was met by defendants Wegner, Wildes and Reinart.

412. At the time of plaintiffs return to the jail on November 18, 2002 the jail staff received a Medical Discharge Instruction from Brenda Mombourquette's treating physician directing jail staff to place the plaintiff on a suicide watch and defendant Reinart signed the directive indicating she had noted it and then placed the discharge instruction sheet into plaintiffs jail file.

413. On November 18, 2002 when the plaintiff was returned from Gundersen Lutheran Psychiatric unit the Medical Discharge Instructions provided to the jail staff by the hospital for the plaintiff included prescriptions for medications for Depression and anxiety.

414. At the time of plaintiffs return to the Monroe County jail on November 18, 2002 while meeting with defendant's Wilde and Reinart the plaintiff told them that she had

6

recently attempted suicide again while she was in Gundersen Lutheran hospital psychiatric unit.

415. On November 18, 2002 plaintiffs Probation Officer Stan Roellich and Jail pastor Leroy Sua advised the Monroe County Jail staff that they had seen that the plaintiff had a pencil and it should be taken away for her safety because she had tried to hang herself recently while at the Gunderson Lutheran psychiatric ward.

416. On November 18, 2002 defendants Amundson, Wildes, Shaldach, Leis Wieman and Reinart were working at the Monroe County jail.

417. On November 19, 2002 defendant Warner placed a phone call to Gundersen Lutheran psychiatry unit and confirmed that plaintiff had attempted suicide while there, noting that fact in the plaintiffs jail file.

418. On November 20, 2002 at 5:41 a disturbance occurred in the plaintiff's cell block between plaintiff and the other inmates which upset her such that she asked to be removed to another location but was denied by jailors.

419. On November 22, 2002 at 5:59 jail staff again logged a disturbance in the cell block between plaintiff and another inmate.

420. On November 22, 2002 despite the emotional agitation to plaintiff in the cell block and the jail staffs awareness that the plaintiff was at substantial risk of self harm, none of the named defendants took any steps to place the defendant on a suicide watch and properly segregate the plaintiff and monitor her as a high risk inmate as required by their training and policy.

421. Between November 18, 2002 and November 22, 2002 despite the medical discharge instruction to commence a suicide watch and the Monroe County Jailors

7

knowledge that plaintiff presented a substantial risk of self harm none of the named defendants took any steps to appropriately segregate the plaintiff and place her on suicide watch to protect her from self harm and, instead, placed her into the general population without adequate monitoring and observation and were deliberately indifferent to her constitutional right to be protected from self harm.

422. On November 22, 2002 at 14:57 plaintiff attempted suicide by hanging herself in her cell with a sheet and was found by defendant Janusheske unconscious, without pulse.

423. As the direct result of the plaintiffs act of self harm and loss of oxygen to the brain, she suffered an anoxic brain injury, is confined to a wheel chair, and is required to reside in an adult foster home under 24 hour care and is unable to communicate with her children in a meaningful way.

424. According to law Wisconsin Jail officers must be trained and certified as qualified by the Wisconsin Department of Justice Law Enforcement Standards Board.

425. Each of the jailor defendants is a certified jail officer and was trained by the Wisconsin Department of Justice Law Enforcement Standards Board in supervising "special inmates" which, includes inmates who are suicide risks as required by Wis. Stats. §165.85 (4) (2), and that they are obligated under the United States Constitution to protect inmates from the known risk of self-harm.

426. Each defendant, as Wisconsin Certified jail officers, is trained that their goal in supervising special inmates is to ensure the safety and well being of the inmate by participating as a "team" member in ensuring the provision of adequate care and to share information regarding high risk inmates..

427. Each defendant, as Wisconsin Certified jail officers, is trained that once they

became aware that an inmate is a serious risk of self harm if they ignore that risk and take no action to protect the inmate from self harm they are deliberately indifferent to that inmates constitutional right to be protected from self harm.

428. Each defendant, as Wisconsin Certified jail officers, is trained to consider every depressed inmate a suicide risk, that there is a very high correlation between depression and suicidal feelings and to assume that any inmate who has been diagnosed as depressed is a significant suicide risk of suicide.

429. Each defendant, as Wisconsin Certified jail officers, is trained that inmates who have exhibited suicidal tendencies either during intake screening or after being confined should to be considered the highest risks for suicide.

430. Each defendant, as Wisconsin Certified jail officers, is trained that inmates who have harmed themselves on purpose should be considered higher suicide risks even if their injuries are not potentially lethal.

431. Each defendant, as Wisconsin Certified jail officers, is trained that when jail staff observe self-abusive behavior by an inmate the best practice to take a fail safe approach and assume that self-harming behavior per se is a factor in increasing suicidal risk.

432. Each defendant, as Wisconsin Certified jail officers, is trained that once they know an inmate has a history of depression they should always consider that inmate a potential suicide risk.

433. Each defendant, as Wisconsin Certified jail officers, is trained that the constant observation of highly suicidal inmates is the best option and that when constant observation of a highly suicidal inmate is not deemed possible then, at the very least, the inmate should be physically observed at frequent intervals and the interval of every four minutes because a person

a can die within four to five minutes during a hanging attempt.

434.    Defendants Reinart and Warner, as jail nurses and employees of Monroe County, are held to the same standards and duty to protect the inmates from a known risk of self harm as are jailers.

435.    The Monroe County Jail Suicide Prevention Policy in effect in 2002 at the time of plaintiff's suicide attempt required that an inmate known to be suicidal is to be housed in the observation cell and the plaintiff was not so housed by these defendants on November 22, 2002.

436.    The Monroe County Jail patrol policy in effect on November 22n 2002, at the time of plaintiff's suicide attempt, required that any inmate who has been classified as suicidal be monitored more frequently than other inmates at intervals of five to fifteen minutes and the plaintiff was not so monitored.

437.    At all times relevant hereto Defendant Amundson, as the supervisor of the Monroe County Jail had a statutory and constitutional duty to supervise the Monroe County Jail staff and jailors to ensure the safety and security of the Plaintiff, Brenda Mombourquette and other inmates.

438.    At all times relevant hereto Defendant Amundson was aware , having been advised by Wisconsin Department of Justice Jail Inspector that his jail was in violation of state law regarding the segregation of high risk inmates and potentially liable failed to supervise jailors to assure proper segregation and protection of the plaintiff.

439.    As a consequence of all the defendants deliberate failure to protect the plaintiff from the known and substantial risk of self-harm and the foreseeable suicide attempt the plaintiff has sustained permanent brain damage requiring lifelong care.

## V. VIOLATIONS OF LAW

501. Plaintiff re-alleges and incorporates the information contained in paragraphs 1-518 herein against all defendants.

502. Defendants Reinart, Warner, Shaldach, Wegner, Janusheske, Wildes, Leis, Wieman and Fish, each in their individual capacity, were deliberately indifferent to Plaintiff Brenda Mombourquette's right to be protected from the strong likelihood of the infliction of self harm guaranteed by the 8th and 14th Amendments of the United States Constitution.

503. Defendant Amundsen in his individual supervisory capacity was deliberately indifferent to the constitutional rights of plaintiff Brenda Mombourquette to be protected from the strong likelihood of self harm guaranteed by the 8th and 14th Amendments of the United States Constitution, when as the supervisor of the other named defendants he failed to supervise those defendants so as to require the appropriate segregation of high risk inmates, in violation of plaintiffs rights guaranteed by the 8th and 14th Amendment of the United States Constitution.

## VI. DAMAGES

601. As a direct result of the unlawful acts of the defendants plaintiff has suffered and continues to suffer serious emotional distress, pain and suffering, permanent bodily injury, loss of the enjoyment of life and loss of the society and companionship with her minor children and is entitled to money damages in an amount to be determined in excess of $10,000,000.00

602. As a direct result of the unlawful acts of the defendants Erica Seikert has suffered the loss of the society and companionship of her mother and is entitled to monetary damages in in an amount to be determined excess of $1,000,000.00.

603. As a direct result the unlawful acts of the defendants Christina Seikert has suffered the loss of the society and companionship of her mother and is entitled to monetary

11

damages in an amount to be determined in excess of $1,000,000.00

## VII. CONDITION PRECEDENT

701. All conditions precedent to this lawsuit within the meaning of Rule 9C of the Federal Rules of Civil Procedure have been performed or have otherwise occurred.

## IX. PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment awarding the plaintiff compensatory damages in the amount determined just by the court, awarding the plaintiff punitive damages in an amount determined just by the court against the individually named defendants, awarding the plaintiff the reasonable costs and expenses of this action including a reasonable attorney's fee and her out-of-pocket expenses and granting the plaintiff such other and further relief as may be just.

## X. DEMAND FOR JURY TRIAL

The plaintiff demands trial by jury of all issues triable of right to a jury in this action.

Dated this 2nd day of May, 2006.

**DEVANIE & BELZER, S.C.**

BY: /s/ Michael J. Devanie
Michael J. Devanie
State Bar No. 1005777
Attorney for Plaintiff
300 North 2nd Street, Suite 310
La Crosse, WI 54601
(608) 784-8055

## CERTIFICATE OF SERVICE

STATE OF WISCONSIN )
) ss.
COUNTY OF LA CROSSE )

Mary L. Johnsrud being first duly sworn, on oath deposes and states that I am a Paralegal employed by Devanie & Belzer, S.C. and that on this date I have served one copy of the following:

**AMENDED COMPLAINT**

Via Email and U.S. Mail to the following:

Charles Bohl
Andrew Jones
Whyte Hirschboeck Dudek, SC
555 E. Wells Street #1900
Milwaukee, WI 53202-3800

Martin Dvries
Sager, Colwin, Samuelsen & Associates, S.C.
201 S. Marr Street
Fond du Lac, WI 54935

Dated this 2nd day of May, 2006

      /s/ Mary L. Johnsrud
      Mary L. Johnsrud

Subscribed and sworn to before
me this 2nd day of May, 2006.

/s/ Michael J. Devanie
My commission is permanent
State of Wisconsin, County of La Crosse